Good morning, Your Honor. My name is Tom Gingras and I represent the Wolcoffs. They're here with me in court today. I have Rob Wolcoff on the end, his wife Heather second from the end, and a young colleague of mine named Leif Taugen who is a relatively recent member of my firm in the bar for that matter. All right, will you be arguing the case though? Are you sharing time or... Oh no, I'll be arguing the case although I would ask that I be allowed, if time permits, to reserve three minutes for rebuttal. All right, I'll let you know when you're at the three-minute mark and you're more, you know, you're welcome to have the parties at council table, but obviously you're the only person that, you know, addresses the court. Thank you, Your Honor. I was not planning on having them testify. The thing about this case is the defense would have you believe essentially that it's like an auto accident. That is, that there was a collision, someone was hurt, the Wolcoffs knew who, quote, the driver, close quotes, was and therefore... Help me on something a little different from that. Sure. Frankly, I share your view that you really don't know who the doctor who's messing around with you at the hospital works for because they have all these local tenants, like in this a doctor who appears to be employed by the hospital actually works for a corporation that contracts with the hospital. They have lots of these and they don't tell the patients. It strikes me that we really don't need to resolve the independent contractor employee question at all. If Dr. Yost did work for the hospital and you sued her within two years, then the government would have filed a motion to substitute the United States for her as the defendant and the United States would have been the sole defendant under the Westfall Act. If you sued her in two years and she didn't work for the hospital, then the government would not file a Westfall motion and she'd be out there with the malpractice insurance that the local tenants company had fought for. Either way, it wouldn't matter whether she was an independent contractor employee from the point of view of suing her within two years. Have I got that doctors are professionals. They don't like to be sued any more than the next person and I have no inclination to sue a doctor just to find out something if there's no reason to sue them and there's nothing that puts either our clients or ourselves on inquiry notice that she might be in something other than what she appears. But you still know if you're suing for something, there's a two-year statute of limitations. Either way, whether she's an independent contractor, whether she works for the government or whatever, right? And I think that's what Judge Kleinfeld's making the point. Why are we talking about that first when you have to get over the two years before that even becomes relevant? Well, I guess it's relevant in this context because since it's an FTCA proceeding, you have to go through the administrative claim process first and as we discussed in the case from I believe the Third Circuit, my own opinion and I think it's appropriate is in all the years I've been in practice, and it's more than 30 now, I've never for example sent a letter to an adverse party asking substantive questions about matters that are relevant in a potential case. Let's assume they would not have been helpful. I think in the brief the government suggests, oh you didn't ask, but as I remember when you tried to do some discovery they were quite resistant to the information. Let's assume they would have blown you off. Still, I can't see any reason not to have sued her within two years except the tactical one of hoping she won't be quite as hostile a witness. Well, there is the reason that from all the evidence that we had and that the Wolkhouse had, when they went to the Alaska Native Medical Center, they saw her in an ANMC office. I think the they were provided with surgery by Dr. Olson. She works at the hospital. It's not unreasonable for them to think she works for the hospital, but you don't know that. You never know. I mean a lot of doctors work on you at the hospital that don't work for the hospital and the lawyer knows that that's so. So what is your best argument for equitable tolling? Looking at the Santos case, which we the court in Santos made it clear that if you're talking about this kind of situation, at least part of the holding seemed to be that there was no reason for Santos or her counsel to inquire as to the employment status of the physician or the status of the institutional health care provider. And if I'm reading the quote correctly, while the record does not indicate where this assertion is true, that is a simple inquiry directed at the health center would have been sufficient in and of itself, clearly presents the odd scenario in which Santos, a potential claimant, would have relied on her adversary to inform her of the applicability of the FTCA and its two-year statute limitations. It seems to me that that's the situation in this context and in their opposition brief, I believe the defendant, Dr. Yost, argued the distinction based upon the notion that Santos involved a claim by a minor, although the first thing to note is that clearly her lawyers were not minors. And secondly, if the parade of horribles that the defense raises, and there was a bit of that, my Latin's a bit rusty, I guess because I've never taken Latin, but I feel odd absurdum. That is, if you want to try to demolish someone's argument on the other side, you create a parade of horribles, make it seem like it's completely unreasonable to come out the way that the opposing counsel wants for that very reason. If the court, including this court, wants to focus on special factors at all, I would point out that if it matters, and I don't think it does, but my understanding is that there's always been a trust kind of relationship between the United States government and Alaska Natives, or for that matter, American Indians. And by way of example and not limitation, I'd refer the court to a case called Jones v. Alaska, 936 P. 2nd, 1263, which talks about some circumstances, not involving this particular kind of case, but where a Native allotment is involved, and the United States is essentially functioning as a trustee. I think there's a fair argument to be made that if the United States is going to adopt that kind of position with respect to Alaska Natives, then perhaps it ought to, in fact, have been disclosing information and arguing on behalf of Mr. Wolkoff with respect to the status of Dr. Yost. I don't see why the employment status of Dr. Yost was the plaintiff's problem. It seems like it's the defendant's problem. Dr. Yost is the surgeon who did a bad job. If you're suing for negligence, she's the actual person who was negligent, so you sue her, and then it's the government's problem. If she was working for the government, the government has to pay the money, and if the government can prove she didn't work for the government, then the malpractice insurer pays the money. I guess I still don't have a clear answer to why not sue Dr. Yost. You know, she's the surgeon who botched the surgery. Why not sue her within two years? The flip side is that there is no indication at all that she was anything other than an employee of the Alaska Native Medical Center. Even if she is. Well, if you have, you started your argument with a simple collision. Let's say you do have a simple intersection collision. You're driving down 7th Avenue, and there's a four-way stop at, I don't know, H Street, and you do just what you're supposed to, and the Acme laundry truck runs a stop sign and hits you. Well, you sue the driver of the Acme laundry truck and Acme laundry. And it's their problem, and their insurance company's problem, to sort out who's who. You don't just sue Acme laundry, you sue John Doe, the truck driver. Well, actually, Your Honor, what I would do... You never want to sue John Doe, the truck driver. Sometimes John Doe, the truck driver, will be a useful witness. He'll say, Acme gave me a truck with no brakes, so you want to keep him on your side. But that's just tactics. Actually, Your Honor, what I would do in that situation is sue the company, allege that the employee was acting within the course and scope of his employment, and if in the answer it turns out that the company says, well, he stole the truck, or he was acting outside the course and scope, or something like that. The problem here is that we're obligated, as I'm sure you realize, to go through the administrative claim process, which is jurisdictional. We have a problem that that would raise if the circumstance was you wanted to sue both. The hospital, the government, and the negligent doctor, but you know you can't sue the hospital until you go through the claims process, and the six months ran you over the statute. But that's not the circumstance here. That's true, because we didn't find out until the United States filed its answer in the lawsuit, that the United States was taking the position that Dr. Yost was not an employee. And getting back to that issue for a moment, we think that as a practical matter, she was an employee because the indicia are there for an employee based upon the facts of the interaction between Dr. Yost and the Wolkoffs. And moreover, notwithstanding whatever arguments have been made by the Dr. Yost, there was no contract. I mean, you could still get him for negligence if they negligently hired a locum tenants who was in trouble with medical boards all over, and didn't know what she was doing, and people on a staff said she was no good. Well, and you state that the the action against the US government is stayed, right? That's correct. Stayed pending the outcome of this appeal. And then it goes back down there, and then they file their summary judgment. Is that what happens? It goes back down to the lower court, and if they think they've got a shot at it, I'm sure they would file a motion for summary judgment. What I was starting to say, and maybe this is... I think the motion for summary judgment by the government would be baseless, because there are some arguments that can be made against the government that relate to things like retain control and or... Well, but it would be that she was an independent contractor. Not the merits of it. That would be the basis, right? Their motion for summary judgment? Yes. Presumably, yes. And the response would be that they retain enough control over her because of the way... All right, I think you answered Judge Fletcher's question. You're at... Basically, you're under... You're just about at two minutes, so if you want to retain any time, this would be the time to sit down. Okay. Thank you. Yeah, I've never been asked to sit down before. Well, you can get back up again, but the... You can use all your time right now if you want. Good morning. Good morning. May it please the court, my name is Monique Renner and I'm here on behalf of Dr. Yost. I'd like to... You're the government's lawyer or Dr. Yost's lawyer? No, for Dr. Yost. The government is not participating. I'd like to address... I think the court has pointed out that the facts are clear. I don't think that there is any question at all that the statute of limitations has passed. Was there any reason that she couldn't be sued within two years? No. The facts... The plaintiffs have... I think in this case, the timeline is quite relevant because it shows the diligence or lack thereof on behalf of plaintiffs. And in this case, we had... I mean, there's no doubt when we're talking about the automobile accident, this case is no different in the fact that... Is it true, incidentally, that when plaintiff's counsel requested a copy of Dr. Yost's personnel record, August 22, 2008, he didn't get it and the government didn't give it to him until July 15, 2009, almost a year later? Well, plaintiffs argue that during the administrative part of this, which their administrative claim was filed in 2007, the surgery was 2005. They knew exactly who Dr. Yost was and they knew... They had expert reports that said that Dr. Yost... Allegedly, the first injury came from that first surgery. There were subsequent injuries and there was an infection that occurred after. But for the purposes, they did inquire, at least according to the plaintiffs, they did inquire with regards to information from the government. The government said, yeah, sure, we'll give it to him, but we got to have a protective order. But they seem to be fairly obstreperous, and if I would make an argument for the Wolcott's, and so that's why they're asking for equitable tolling, I guess, that if they could have gotten the documents, then they could have done what they needed to do. But it's... The timeline is different. They knew exactly who Dr. Yost was and they filed their complaint in March 2008, and although they don't identify her specifically, they do know who she was, they did not enter into a stipulation for a protective order until 2009, after they filed their first amending complaint. So, if I'm to understand your argument, regardless of any obstreperous or obstructive behavior they faced, they knew who she was and they needed to sue her in the two years. Or sued her in the alternative, and it happens all the time. You just can't assume that you go into a hospital and that the person cleaning the floors or the person in the cafeteria that gave you food poisoning, you cannot ever assume that that person is an employee of that entity. You also can't assume anyone will tell you the truth about anything. But the difference is... Hospitals owe a typical thing, just an example, I was involved with a hospital radiologist and he works at the hospital, his office is in the hospital. He asked people where he works, he says I work in a hospital. All the x-rays go to him, but actually so that it can continue to get charitable contributions without people knowing the deal, the hospital pays the professional corporation he set up hundreds of thousands of dollars a year that just go to him for reading the x-rays, but it looks like it's going to an outside firm and they're secretive about that because it might look bad. That happens a lot. My guess is that hospitals don't want patients to know that local tenants passing through some doctor that doesn't have a regular practice is the one doing surgery on them. And there are all sorts of tax and business reasons too for even taking apart from hospital that a clinic would set up a specifically owns just the equipment, which is separate and apart from the actual surgeon and the work that he does. And there are reasons, you know, tax and business reasons that they would do that. But in regards to this... But I guess it's sort of that people can't have it both ways and that what I'm hearing Council for the Wolcott's to say is, you know, I don't really just want to go and sue everyone in the world unless I have a reason to sue someone. And we hear all the time about that we're all paying more because people just sue doctors, you know, they sue everyone in the whole hospital even though someone all they might have been doing was walking down the hallway and they never saw a patient. So you have both of those competing things go on and then, you know, then we say, well if someone's trying to be cautious and only sue, you know, in the in the realm of the possibilities of who would be responsible, then we say, well no you're not entitled to equitable tolling or no we, you know, we don't have to tell you anything. I mean, maybe your facts are different here, but I mean, but the argument about don't sue everyone, it raises everyone's cost and then someone's trying to be cautious and then we say, oh, but you blew the statute. The difference is, is that there was absolutely no inquiry at all on behalf of the employment status of whether or not Dr. Yost was an independent contractor or whether or not she was an employee. She had a badge. There was an inquiry when he asked for the personnel file. And they said absolutely, and that was, that is the farthest that they got. But again, the stipulation for the protective order wasn't even entered into until after they had already sued Dr. Yost. So they talk about, and if you look at the statute, there's no inquiry required about it, but other than inquiring about it and the government coming back and saying that, okay, yeah, we'll give it to you, but we got to enter into a protective order for all sorts of reasons, they never followed up. They never did anything and they never did anything until 2009, after they had already amended the complaint. What if the facts had been different, that they didn't really know who the person was? They didn't have the name, right? Then they're trying to ascertain who the person is and the hospital's not cooperating, saying who the actual doctor was. Would that, would they be in a different situation then? Say that the hospital's stonewalling them and they can't find out who the person really is. They just know they saw a doctor. In that scenario, yes, but that is not the scenario here. The scenario here is Dr. Yost had a badge, like I said, that clearly said she was a contractor. They had documents that said Dr. Yost. They have never contested that they knew Dr. Yost. There was an issue of fact on whether the badge said she was a contractor and I would guess most patients wouldn't know what that meant anyway. Well, and Mr. Wolkoff is a security guard at the hospital and his, according to his deposition, it is to... All security guards know all about locum tenants? No, I didn't say that. I would say that it is his job to know and for people that are coming in and off the premises of the hospital. So is your best argument that they knew who Dr. Yost was and they don't need to know whether she's an independent contractor or an employee in order to sue her? Is that your best argument? And they, they know that she's the person that they feel performed negligent surgery? Yes, they knew and they knew these facts directly after the surgery that occurred in June 2005. They had a medical report, they had an expert, they had retained counsel. The only thing they did not know was her employment status and the reason that they did not know that is other than the fact that the one inquiry that they made with the hospital, they never, they never did anything else. They're talking about a case with the Santos in regards to a minor and we do not differentiate the case of Santos on the lawsuit against the individual doctors in the hospital and state court believing that it was the proper form to sue them and then it turned out that because they were federally funded or received partial that they were actual federal employees and they actually went and did public searches and they they would have had to gone to the extra step of finding the funding of that hospital to determine that they were in fact federal employees. It's the reverse here. They, they never, they never sued Dr. Yost. So, I mean, the, the, in my mind, you're, you're comparing apples and oranges. I mean, I think the case in Gonzales, which is the case with the district court relied upon, is the case that is here that the problem that the plaintiffs have to overcome is both the attorneys, they had experts, they had legal representation and they failed to determine what her employment status was to their own detriment and it's a harsh remedy but it's exactly the purpose of the statute of limitations. They had two years to do it and they failed to do it. They knew who Dr. Yost was and they knew the cause of the injury and they just didn't know the employment status. It doesn't appear we have additional questions. You do have five minutes but that's up to you. If you, you don't need to use it if you don't want to. I'll reserve the five minutes. No, you don't get to reserve it. Once you sit down. You're the, you're the, you're the. Okay, thank you. Thinking about her argument, you asked your honor, Judge Kleinfeld, was it true that we couldn't get her employment records without the stipulation for the protective order? That's what happened. In terms of what inquiry did, we got, and by I say we, we had our clients who were patients of the ANMC, meaning Mr. Wolkoff, get the records because I had one experience, unpleasant as it was, where at ANMC some records had been altered and so since the patient is entitled to get the records anyway, I typically have the patient get the records as opposed to me obtaining the records. In terms of the records that we have, in terms of her 2005 time frame, a couple documents are important, at least to me. One is the consent form that Rob Wolkoff signed, said that he was authorizing surgery and treatment to be done by Dr. Yost of ANMC. And through our mind, and I believe to Mr. Wolkoff's mind, the only way to interpret that was that she was being held out as an employee and she signed it. Later on in the timeline, we got records from ANMC when we were able to get our hands on the personnel file indicating that her supervisor was a Dr. Sacco at ANMC and that he had authority over her. He gave her permission to have computer access as part of her employment package. She agreed to be bound by all the rules and regulations and bylaws of the hospital. And to touch upon a point that was mentioned briefly by your Honor, I think it would have been a waste of time. If I had gone to like Alaska Native Medical Center with a court report saying I'd like to ask people about the employment status of Dr. Yost, they would have said call the U.S. Attorney's Office. Or they would have just said we don't know and we're not going to tell you. I don't believe in wasting time. There's no evidence that we would have gotten the evidence if we had asked. There are no affidavits from either the United States. But it seems like your argument about whether she's an independent contractor or not, if the government was stonewalling you on that particular point and you hadn't sued the government during the two-year statute of limitations, then you might have an argument for equitable tolling against the government. But you knew who Dr. Yost was. You had experts that she had fallen below the standard of care in her treatment of your client. What more do you need to know to sue her? Well, because I think it's wrong to sue someone if they're immune from the suit. And based upon all the information that we had after what I think is reasonable inquiry, she was immune from the suit under the Federal Tort Claims Act. That exposes our clients to attorney's fees in Alaska anyway. If you file something that proves to be groundless and you lose, that's a consideration that matters to people like the Wolkoffs who are not the Rockefellers by any means. All right. I understand that argument. You're in overtime, so wrap it up. Okay. The other thing is, to the extent that this court feels like issuing a ruling on this point, it seems like disclosure would be a good idea. Because for myself, if I were going to a hospital and I needed brain surgery, I would want to know if it was a temp that was doing the brain surgery as opposed to regularly practicing doctor in the facility. Thank you very much, both of you, for your argument. This matter will stand submitted.
judges: B Fletcher, Kleinfeld, Callahan, Cjj